BOERSCH & ILLOVSKY LLP
Matthew Dirkes (State Bar No. 255215)
matt@boersch-illovsky.com
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Attorney for Defendant
LUIS CASTRO-VALLE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>LUIS CASTRO-VALLE,<br><br>　　　　　　Defendant. | Case No. 22-cr-00311-CRB<br><br>**DEFENDANT LUIS CASTRO-VALLE'S SENTENCING MEMORANDUM** |

Luis Miguel Castro-Valle submits this memorandum for the Court's consideration in connection with his upcoming sentencing. He has no objections to the guidelines calculation in the Presentence Report.[1] ECF No. 61. He appreciates the Probation Office's below-guideline recommendation of 40 months and agrees with the office's recognition that a downward departure and variance are warranted. PSR ¶¶ 112-115; PSR Sentencing Recommendation at 3. He respectfully submits that a sentence of 24 months is adequate and no greater than necessary to provide just punishment given the circumstances of the case and of Mr. Castro-Valle as a person.

## I.     MR. CASTRO-VALLE

Mr. Castro-Valle grew up in extreme poverty in Honduras, where he and his siblings were raised by their single mother. PSR ¶¶ 75-76. On the sporadic occasions when his father came around, he was physically abusive to Mr. Castro-Valle's mother. *Id.* at 75. Unable to afford regular running water and electricity, they went long stretches without them. *Id.* ¶¶ 75-76. Two older sisters died when his mother could not afford medical treatment for them and instead relied on homeopathic remedies. *Id.* ¶ 74. His mother worked long, hard days and, starting when he was seven years old, he began working alongside her and his siblings in the fields whenever he was not in school. *Id.* ¶ 76.

Not only was his childhood marred by extreme poverty, hard labor, and domestic violence, but Mr. Castro-Valle and his family were surrounded by gang-driven crime and violence. *Id.* ¶ 77. Mr. Castro-Valle witnessed murders and was harassed by gang members, who would target him in their recruitment efforts. *Id.* Eventually, fear of gang persecution, and search of a better, more stable life, prompted him to leave Honduras for the United States several years after he completed sixth grade. *Id.* ¶¶ 77, 87.

His journey here as a juvenile was perilous. He saw people kidnapped and killed along the way. *Id.* ¶ 78. Halfway through Mexico, he ran out of money and was compelled to stop and beg for food at streetlights. *Id.* When he finally reached the border in 2013 as a 16-year-old, he turned himself in to U.S. immigration authorities. *Id.* ¶¶ 78-79.

---

[1] Although the PSR notes one non-guideline objection by Mr. Castro-Valle, PSR at 28, we hereby withdraw that objection in light of the Probation Office's response.


1                                    DEFENDANT'S SENTENCING
                                     MEMORANDUM
                                     Case No.: 22-cr-00311-CRB

Although he began proceedings to adjust his immigration status, that process was never completed. He is subject to removal and will be deported upon the completion of his custodial sentence. *Id.* ¶ 79.

## II. NATURE OF THE OFFENSE

After Mr. Castro-Valle was released from juvenile immigration custody here, he began looking for work. *Id.* ¶¶ 78, 88. He spent weeks standing in front of Home Depot and Walmart, trying, without success, to get hired as a laborer. *Id.* ¶ 88. He found some work in an auto-body shop and with a delivery company but ultimately none of that provided a steady income. *Id.* Enticed by the promise of reliable pay, he began selling drugs, mostly in the Tenderloin, and, eventually, mostly fentanyl given the skyrocketing demand for it. He told his mother what he was doing, as she is someone he has always trusted and relied on, and explained to her how hard it was to find work here. *Id.* ¶ 74. In response, she scolded him. *Id.*

Much of what Mr. Castro-Valle made selling drugs he sent back to his mother and family in Honduras. *Id.* ¶ 42 ("He felt he did not have many employment opportunities and turned to selling drugs to send money to his family in need in Honduras."). And although he worked with and sold dangerous hard drugs, he never used them himself. *Id.* ¶ 86.

## III. A SUFFICIENT AND FAIR SENTENCE

A sentence must be "not greater than necessary" to "provide just punishment," deter criminal behavior, and protect society. 18 U.S.C. § 3553(a). We respectfully suggest that a sentence of two years would provide just punishment in this case.

Under § 3553(e), a downward variance is appropriate. As noted in the PSR, the Court may consider Mr. Castro-Valle's impoverished childhood surrounded by gangs and violence and his traumatic experiences, including those suffered on his way to the United States. PSR ¶ 115; PSR Sentencing Recommendation at 3.

In addition, Mr. Castro-Valle will be deported after he finishes serving his time in prison. A lengthier sentence will not serve to protect the public. Mr. Castro-Valle's criminal history score is zero. *Id.* ¶ 57. Although he's been arrested several times previously, none of those arrests were for

acts of violence, gang-related activity, or firearm possession. This case is the first time Mr. Castro-Valle has faced any real consequences for drug-related conduct here in the United States. He appears to have learned his lesson. There is nothing to suggest he'll reoffend. To the contrary, as he candidly admits in the PSR, he accepts responsibility for committing the instant offense and feels remorse about it. *Id.* ¶ 42. "He believes he hurt the community at large by selling dangerous drugs to individuals." *Id.*

The violence associated with the drug trade has hit close to home for Mr. Castro-Valle. His cousin, Nohe Rodrigues Valle, with whom Mr. Castro-Valle grew up and was very close, also came to the United States before succumbing to the world of drug abuse and sales. Nohe was stabbed to death in Bakersfield last summer, ECF No. 64-1 (article describing murder), leaving his two young children in Honduras fatherless. Mr. Castro-Valle will help raise and support them upon his return. Ultimately, Mr. Castro-Valle has recognized how dangerous – to him, his family, and to the community at large – his actions have been.

He also deeply regrets how his conduct hurt others close to him. Shortly after he was arrested, his girlfriend, who was pregnant with Mr. Castro-Valle's first child, lost their baby due in large part to the stress from this case. *Id.* ¶ 80. Mr. Castro-Valle was devasted, as he "had already been thinking about changing his life [to be ready] when his new baby arrived." *Id.* He looks forward to being a good father to his future children and does not want to be like his own father. *Id.*

Upon his return to Honduras, he will join his mother and the rest of his family working the land that his grandfather left and will help raise his deceased cousin's children. *Id*. ¶ 82. Although he still fears gang violence in Honduras, he hopes to get married and raise his family there. *Id.*

## CONCLUSION

For the reasons stated, Luis Castro-Valle respectfully suggests that a sentence of two years is sufficient and no greater than necessary to impose just punishment in this case.

DATED: January 27, 2023　　　　　　　　　　　　BOERSCH & ILLOVSKY LLP

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Matthew Dirkes*
　　　　　　　　　　　　　　　　　　　　　　　　MATTHEW DIRKES
　　　　　　　　　　　　　　　　　　　　　　　　Counsel for Luis Castro-Valle