STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MAYA KARWANDE (CABN 295554)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Maya.karwande@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-CR-00311 CRB |
| Plaintiff, | **UNITED STATES SENTENCING MEMORANDUM** |
| v. | Judge: Hon. Charles Breyer |
| Luis OCHOA,<br>   a/k/a Luis Valle,<br>   a/k/a Luis Castro-Valle<br>   a/k/a "Panda,"" | Sentencing Date: February 3, 2023<br>Time: 9:00 a.m. |
| Defendant. | |

## I.    INTRODUCTION

From at least April 2021 through October 2021, Luis Ochoa worked with his co-defendant and his older brother, Roger Arteaga, to run a drug trafficking organization (DTO) that distributed kilograms of fentanyl in the Bay Area. Ochoa was largely in charge of obtaining the drug supply and collecting money while his brother Arteaga, was the "face" of the organization, interacting with street level dealers and making drug deliveries. Together, Ochoa and Arteaga obtained fentanyl from their suppliers, prepared the fentanyl for further distribution by dying it different colors, and then sold the fentanyl to other re-distributors. The Ochoa-Arteaga DTO was also engaged in lower-level street dealing and sale of other narcotics, including methamphetamine, heroin, cocaine, and cocaine base.

Between March 2015 and January 2020, Ochoa was arrested ten times for drug related offenses in San Francisco. Undeterred, Ochoa engaged in increasingly sophisticated drug trafficking, moving up from street level dealing in the Tenderloin to the procurement of large quantities of fentanyl which he and Arteaga would dye different colors as part of a marketing scheme. During the course of the conspiracy, agents recovered a kilogram of yellow fentanyl that Arteaga had sold to another individual. When Ochoa was arrested, agents found silver tinted fentanyl that weighed 628.5 grams (gross weight); two bags with green tinted fentanyl that weighed 257.7 grams (gross weight); one clear bag containing white tinted fentanyl that weighted 458.8 grams (gross weight), numerous clear bags containing purple and pink tinted fentanyl that weighed 120.1 grams (gross weight), a large chunk of black substance, 457.8 grams (gross weight), and numerous baggies of heroin that weighed 742.7 grams (gross weight) in the trailer where Ochoa had been living.

Accounting for Ochoa's role in the conspiracy, the quantity of fentanyl sold, mitigating circumstances related to Ochoa's upbringing and life circumstances, and his acceptance of responsibility, the government recommends the imposition of a downward variance of a 48-month sentence, followed by a mandatory three years of supervised release, a $100 special assessment, and forfeiture.

**II.   PROCEDURAL POSTURE**

On October 12, 2021, the Honorable Thomas S. Hixson, U.S. Magistrate Judge, issued a criminal Complaint charging Ochoa, his brother Arteaga, and three co-defendants with conspiring to traffic fentanyl in the Bay Area. Dkt. 1. In conjunction with the Complaint, the Court issued warrants authorizing the arrest of Ochoa and Arteaga. *Id.* On October 14, 2021, federal agents arrested Ochoa and Arteaga.

On October 12, 2022, Ochoa entered a guilty plea to Count One of the Information charging him with a violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) – Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl – pursuant to a written agreement with the government.

**III.   SENTENCING GUIDELINES CALCULATION**

In paragraph two of the parties executed plea agreement, Ochoa admitted to distributing or possessing with intent to distribute at least 1.2 kilograms of fentanyl, but not more than 4 kilograms

grams of fentanyl during the course of the conspiracy. The commensurate base offense level under the U.S. Sentencing Guidelines (U.S.S.G.) is a level 32. The plea agreement includes a two-point reduction for a Global Disposition reduction under U.S.S.G. § 5K2.0(a)(2)(B) with Ochoa's brother, Roger Arteaga. The government submits that the requirements for U.S.S.G. § 5K2.0(a)(2)(B) have been satisfied. In addition, Ochoa satisfied the requirements for a two-level reduction under U.S.S.G. § 2D1.1(b)(18) and the government concurs with Probation's recommendation of a two-point downward variance. Accordingly, the applicable Guidelines calculation, including recommended downward variances, is as follows:

    a. Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5), (c)(7)):    32
       (At least 1.2 kilograms but less than 4 kilograms of fentanyl)
    b. Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)):    - 3
    c. Global Disposition (U.S.S.G. § 5K2.0(a)(2)(B))    - 2
    d. U.S.S.G. § 2D1.1(b)(18):    - 2
    e. Final Offense Level    25

The parties and Probation agree that is a Criminal History Category I, resulting in an advisory Guidelines range of 57-71 months. As noted above, the government seeks the imposition of a 48-month sentence, which constitutes a 15% downward variance from the low-end of the Guidelines range.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense, the history and characteristics of the defendant, the need

to afford adequate deterrence, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(6).

### A. OCHOA sold kilograms of fentanyl.

Fentanyl, a cheap synthetic opioid, has been devastating San Francisco and the Bay Area since at least 2020. In 2020, data reported by the San Francisco Office of the Medical Examiner indicates that approximately 725 individuals in San Francisco died from drug overdoses, a 60% increase from the year before. Of those deaths, the vast majority, 71% involved fentanyl.[1] The percentage of overdose deaths involving fentanyl has remained constant since 2020. Most recently, in 2022, preliminary data reported by the San Francisco Office of the Medical Examiner indicates that approximately 620 individuals in the city died of accidental drug overdoses. Of those deaths, 451 (72.7%), involved fentanyl.[2]

The high number of deaths attributable to fentanyl is due to its potency. Fentanyl is about 50 times stronger than heroin and about 100 times stronger than morphine. According to the DEA, two milligrams of fentanyl can be a fatal dose.[3] A kilogram of fentanyl contains approximately 500 deadly doses. Also as a result of its potency, fentanyl is extremely addictive. From a drug trafficker's perspective, fentanyl is popular because it is less expensive to than other drugs, more addictive, and easy to adulterate and mix with other drugs.

As fentanyl has gained in popularity, drug dealers have attempted to engage in marketing to distinguish their fentanyl from others and to develop preferences among users. DEA has found during its investigations that fentanyl is often referred to by drug traffickers either by the color of the substance itself or by the color emitted when the drug is burnt. For example, some fentanyl emits a blue color when lit. This is often referred to by drug traffickers and users as "blue" or "azul" (the Spanish word for blue). Previously, investigators seized "blue," "yellow," and "pink" varieties of fentanyl. The

---

[1] Rodda, Luke. Office of the Chief Medical Examiner. Report on Accidental Overdose Deaths. January 10, 2023, available at https://sf.gov/sites/default/files/2023-01/2020%20_OCME%20Overdose%20Report%20Updated%2020220109.pdf (last accessed January 27, 2023).

[2] Rodda, Luke. Office of the Chief Medical Examiner. Report on Accidental Overdose Deaths. January 18, 2023, available at https://sf.gov/sites/default/files/2023-01/2023%2001_OCME%20Overdose%20Report.pdf (last accessed January 27, 2023).

[3] U.S. Drug Enforcement Administration. Facts About Fentanyl, https://www.dea.gov/resources/facts-about-fentanyl (last accessed October 2, 2021).

investigation into Ochoa-Arteaga DTO revealed that additional "colors" or varieties of fentanyl exist including "green," "purple," "silver" and "red." Further, the investigation revealed that the Ochoa-Arteaga DTO was adulterating their supplies of fentanyl by adding colored dyes in an attempt to market or brand a specific variety of fentanyl, although typically there is no real difference between the different colors. PSR ¶ 8.

As detailed in the PSR, intercepted calls revealed that Ochoa coordinated with Arteaga and another street-level co-conspirator to obtain "colorants" that they used to dye fentanyl that they then re-sold for further re-distribution. PSR ¶¶ 13-20. Based on intercepted calls, Ochoa worked with his brother to sell a ½ kilo of fentanyl to a co-conspirator on July 7, 2021, purchased two kilograms of fentanyl on July 25, 2021 and later that day sold a kilogram of fentanyl to a co-conspirator on July 25, 2021, and was discussing adulterating a kilogram of fentanyl on September 2, 2021. Ochoa and his brother were not street-level fentanyl dealers, they were higher up in the distribution chain both in regard to the quantities sold and the involvement in the fentanyl coloring production process.

**B.    History and Characteristics.**

The Presentence Report sheds some light on how Ochoa and his brother came to the United States and became involved in drug trafficking. The Report details the gang violence and attempted recruitment, abusive family circumstances, and poverty that Ochoa and his brother were fleeing when they left Honduras as teenagers. Upon arrival in the United States in 2013, Ochoa stated he worked for three months in delivery before turning to drug trafficking because he could not find other work. PSR ¶ 88.

Since Ochoa has been in the United States, he has been arrested more than 10 times for drug trafficking related offenses but has not been convicted. This case is Ochoa's first serious involvement with law enforcement and since being charged he has fully accepted responsibility for his actions. Considering that Arteaga and Ochoa had similar roles in the DTO (the government has also recommended a sentence of 48 months in Arteaga's case), the deadliness of fentanyl, and his personal history and family circumstances, the government recommends the imposition of a 48-month sentence. This downward variance from the advisory Guidelines range accounts for Ochoa's difficult life circumstances, his acceptance of responsibility, the significant quantity of fentanyl that he sold, his role

in the DTO, and that Ochoa will be deported after serving his sentence.

## V. CONCLUSION

The United States respectfully requests that this Court impose a sentence of 48 months' imprisonment, followed by three years of supervised release, a mandatory $100 special assessment.

DATED:   January 27, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

_____/s_____
MAYA KARWANDE
Assistant United States Attorney

USA SENT. MEM.
22-CR-00311 CRB

6